Pavneet Singh Uppal, SBN 016805
Alanna R. Brook, SBN 028018
Lori Guner, SBN 031646
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
abrook@fisherphillips.com
lguner@fisherphillips.com

Attorneys for Plaintiff TDBBS, LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| TDBBS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> Ethical Products, Inc., a New Jersey corporation, <br><br> Defendant. | No. <br><br> **VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** <br><br> **(Expedited Consideration Requested)** <br><br> **(Jury Trial Requested)** |

Plaintiff TDBBS, LLC, by and through its undersigned counsel, hereby brings this Verified Complaint and Application for Temporary Restraining Order and Preliminary Injunction against Defendant Ethical Products, Inc., and in support thereof alleges and states as follows:

## **INTRODUCTION**

1.      Plaintiff TDBBS, LLC ("TDBBS"), a pet chews and treats business, seeks a temporary restraining order, injunctive and other equitable relief and damages against Defendant Ethical Products, Inc. ("EPI").

2.     Defendant EPI recruited and hired TDBBS's former Vice President of Sales, Timothy Fabits ("Fabits"), for the *admitted* purpose of misappropriating TDBBS's confidential information and trade secrets in order to (unlawfully) jump start EPI's new pet treats and chews business – a business that EPI had previously tried and failed to successfully launch.

3.     On September 28, 2018, TDBBS filed suit against Fabits in Maricopa County Superior Court, alleging misappropriation of trade secrets and breach of fiduciary duty; Fabits removed the Superior Court action to this Court on October 26, 2018 (the "Related Action").

4.     ████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████

5.     As part of Defendant EPI's new "strategy," Fabits, for the benefit of EPI, has engaged in egregious misconduct, including the misuse and misappropriation of TDBBS's confidential and trade secret information and breach of his fiduciary duties to TDBBS.

6.     Defendant EPI's illegal scheme with Fabits has "succeeded." In the six months since it hired Fabits, EPI has gone from having little to no active treats and chews business to selling an entire new line of products derived from "animal body parts," including marketing, packaging, and actual product. EPI – generally, let alone given its past failure – was only able to achieve this accelerated schedule by

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

1  misappropriating and misusing TDBBS's confidential information and trade secrets,

2  which it unlawfully procured by and through Fabits.

3         7.    Indeed, Defendant EPI, including its employee Fabits, just recently

4  attended an industry trade show at which EPI exhibited its new animal body parts line,

5  "Fieldcrest Farms." At this trade show, EPI's employee Fabits aggressively – and

6  successfully – solicited TDBBS customers to switch their purchases of animal body parts

7  products from TDBBS to EPI.

8         8.    TDBBS has learned also that Defendant EPI has secured at least one

9  distributor for the Fieldcrest Farms line. The distributor already carries over 30

10  Fieldcrest Farms items, many of which it is featuring at its Spring Trade Show *this week*.

11         9.    Even more concerning, the annual Global Pet Expo ("Global Pet") – the

12  pet industry's largest and most important trade show – is taking place on March 20-22,

13  2019, in Orlando, Florida. Global Pet would be the biggest and most important platform

14  of the year for Defendant EPI to conduct a full-scale rollout of its illegally-developed

15  animal body part treats and chews business, which is built on a foundation of

16  confidential and trade secret information stolen from TDBBS.

17         10.    TDBBS, therefore, seeks an emergency temporary restraining order,

18  followed by preliminary and permanent injunctive relief, requiring that: (a) EPI return

19  and not use TDBBS's confidential information and trade secrets; (b) for a period of 18

20  months (the minimum amount of time it would have taken EPI to lawfully get to

21  market), EPI cease and desist from conducting, carrying on, or engaging in any pet treats

22  and chews business, including but not limited to the Fieldcrest Farms line, that was

23  developed and/or implemented, in whole or in part, with the assistance and/or input of

24  Fabits and/or the use any of TDBBS's confidential information and trade secrets; and (c)

25  Fabits or anyone acting at his direction or with his assistance be prohibited from

26  attending the 2019 Bradley Caldwell Spring Trade Show and the 2019 Global Pet Expo.

27  **PARTIES**

28         11.    TDBBS is a Delaware limited liability company, with its principal place of

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

3

business in Henrico, Virginia.

12.     Defendant EPI is a New Jersey corporation, with its principal place of business in Bloomfield, New Jersey.

13.     Defendant EPI conducts business under the trade name "Ethical Pet."

**JURISDICTION AND VENUE**

14.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331. More specifically, TDBBS has asserted a claim under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §1836, and this Court has supplemental jurisdiction over TDBBS's remaining claims pursuant to 28 U.S.C. §1367.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because, among other reasons, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district, and a substantial part of the property that is the subject of the action is situated in this judicial district.

16.     The Court has personal jurisdiction over Defendant EPI because it has more than minimum contacts with Arizona and has purposely availed itself of the privilege of conducting business in Arizona, thus invoking the benefits and protections of the laws of the State of Arizona. Defendant EPI, *inter alia*: (a) employs Fabits in Arizona; (b) entered into contracts with Fabits in Arizona; (c) makes payments to Fabits in Arizona; (d) collects Arizona payroll taxes from Fabits and, upon information and belief, remits those taxes to the Arizona Department of Revenue; (e) regularly conducts business with Fabits in Arizona, including but not limited to frequent and regular communications with Fabits in Arizona; (f) directs Fabits's business activities in Arizona; (g) sells its products at brick-and-mortar stores throughout Arizona, including, for example, Pet Food Depot in Phoenix and Scottsdale, Ryan's Pet Supplies in Phoenix, Whiskers Barkery in Prescott and Sedona, and various Petco locations; (h) sells its products through websites such as Amazon.com, Chewy.com, Jet.com, and Walmart.com, including, upon information and belief, numerous sales to consumers in

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

Arizona; and (i) has registered with the Arizona Department of Agriculture as a licensed feed dealer (License No. 30705).

## FACTS

### TDBBS's Business, Confidential Information, and Trade Secrets.

17.    TDBBS, founded in 2007, is a pet chew and treats business that specializes in formulating, sourcing, manufacturing, distributing, marketing, and selling natural pet treats and chews throughout the United States and abroad.

18.    TDBBS sources ingredients globally and sells its products online (both direct-to-consumer and through third-party platforms), through pet specialty retailers, and through mass market and club retailers.

19.    TDBBS's relationships with customers, distributors, suppliers, and other vendors are critical to its success in the growing and competitive pet treat and chew segment of the pet food market.

20.    TDBBS has developed and maintains a substantial amount of trade secrets and confidential and proprietary information, including but not limited to: business plans; pricing, marketing and distribution strategies; product, branding, packaging and advertising development; brand portfolio strategies; vendor/supplier relationships; global supply chain; customer lists and preferences; business partner relationships and agreements; discount structures; channel development; personnel; product formulas; and intellectual property ("Trade Secret and Confidential Information").

21.    TDBBS's Trade Secret and Confidential Information was developed over many years, with a substantial investment of labor, skill, money and knowledge gained from experiences with customers, vendors/suppliers, and government boards and agencies, among others.

22.    TDBBS's Trade Secret and Confidential Information is highly valuable, not generally known outside of TDBBS, and would be of significant value to TDBBS's competitors if known by them. TDBBS derives a competitive advantage and independent economic value, both actual and potential, from its Trade Secret and Confidential

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

5

Information, because the Trade Secret and Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or use.

23.     Consequently, TDBBS takes extensive measures to preserve the secrecy of its Trade Secret and Confidential Information, including but not limited to: requiring employees to sign confidentiality agreements; requiring employees to read and sign an acknowledgment of a handbook that includes TDBBS's confidentiality policy; and employing physical and electronic security measures, including locked offices and filing cabinets and password protected access to TDBBS's computer systems and databases.

### Defendant EPI'S Business.

24.     Defendant EPI designs, distributes, markets, and sells pet toys and accessories.

25.     Defendant EPI has attempted, in the past, to enter the pet treats and chews market.

26.     For example, Defendant EPI previously developed lines of treats under the brand names Healthy Balance, Beastie Bar, and Kettle Creek.

27.     The types of treats that Defendant EPI previously sold – multi-ingredient, manufactured products – are a completely different type of product, with different sourcing, manufacturing, and markets than the single-ingredient chews made from animal body parts. These treats are mass produced in factories, from readily available ingredients, that make similar products for many different buyers. Animal body parts, by contrast, are single-ingredient, natural products that are more difficult to source and produce, present more distribution challenges than manufactured treats, and are targeted at different consumer demographics.

28.     Upon information and belief, Defendant EPI's previous treat brands did not achieve commercial success and were wholly or partially discontinued.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

6

29.     Upon information and belief, Defendant EPI has not, until very recently – *i.e.,* until it began working with Fabits – developed, marketed, or sold animal body parts products (such as bones, ears, bully sticks, etc.).

**Fabits Is Hired by TDBBS and Acquires Extensive Knowledge of TDBBS's Confidential Information and Trade Secrets.**

30.     On or about March 16, 2017, TDBBS hired Fabits to be its Vice President of Sales, responsible for the Barkworthies independent pet channel, with a start date of May 1, 2017.

31.     Although Fabits had prior experience in the pet industry, his experience was largely limited to the sales side of the business. Fabits had no appreciable experience or contacts on the supply side, which is a critical component of TDBBS's business.

32.     In particular, for 14 years prior to joining TDBBS, Fabits worked in sales for Redbarn, which owns its own manufacturing plants. Fabits thus had no need to develop supply-side knowledge or contacts in his work for Redbarn.

33.     On or about March 17, 2017, in connection with his hiring by TDBBS, Fabits signed a Non-Solicitation and Confidentiality Agreement (the "Agreement").

34.     A true and accurate copy of the Agreement is attached at *Exhibit B* hereto.

35.     Among other terms, the Agreement prohibited Fabits, both during and after his employment, from using or disclosing TDBBS's confidential information and trade secrets, except for the benefit of TDBBS and in the course of his employment with TDBBS.

36.     The Agreement also required Fabits, upon the termination of his employment with TDBBS, to return all TDBBS property, including but not limited to its confidential information and trade secrets.

37.     The Agreement also contained post-employment restrictions on Fabits' solicitation of customers, suppliers, and employees of TDBBS.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

7

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

38.     Shortly after he was hired, Fabits' role expanded to include oversight of TDBBS's entire sales organization.

39.     Throughout his employment, Fabits had access to, and a deep knowledge of, TDBBS's Trade Secret and Confidential Information.

40.     For example, in addition to other Trade Secret and Confidential Information, Fabits had access to and knowledge of TDBBS's: supplier information, including contacts, products, pricing, quality, and terms of arrangements with TDBBS; customer information, including contacts, pricing, and purchasing histories; new product development pipeline; packaging details, including vendors and cost; details and strategies regarding product mix; and TDBBS's "Master" product information spreadsheet which, as shown below, contains extensive product, pricing, and cost data on a product-by-product basis.

41.     TDBBS disclosed its Trade Secret and Confidential Information to Fabits under circumstances giving rise to an obligation by Fabits not to use or disclose that information to the detriment of TDBBS.

42.     Except when he was traveling on TDBBS business, Fabits worked from his home in Arizona.

**Fabits Acknowledges TDBBS's Confidential Information Policy.**

43.     On May 1, 2017, Fabits signed a Receipt of Employee Handbook, acknowledging that, "you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it."

44.     A true and accurate copy of Fabits' signed Receipt of Employee Handbook is attached at *Exhibit C* hereto.

45.     Shortly after Fabits began his employment, TDBBS issued a revised Employee Handbook. Consequently, on July 20, 2017, Fabits signed a new Receipt and Acknowledgment of the Employee Handbook, similarly acknowledging that, "you have received a copy of the TDBBS Employee Handbook and understand that it is your

8

1  responsibility to read and comply with the policies contained therein and any revisions

2  made to it."

3      46.    A true and accurate copy of the new Receipt and Acknowledgment of the

4  Employee Handbook is attached at *Exhibit* D hereto.

5      47.    The Employee Handbook contained a policy on "Confidential Information,

6  Trade Secrets, and Intellectual Property" (the "Confidential Information Policy").

7      48.    A true and accurate copy of the Confidential Information Policy is attached

8  at *Exhibit* E hereto.

9      49.    The Confidential Information Policy provides, in part:

The protection of confidential business information, intellectual property
and trade secrets is vital to the interests and the success of TDBBS. Trade
secrets may include information regarding the development of systems,
processes, products, know-how, and technology. Intellectual property may
include, but is not limited to, assignment of inventions, patent and
copyright information, and trademarks. Confidential business information
includes, but is not limited to: (1) customer lists, (2) price lists and
financial information (not including non-managerial compensation or wage
information), (3) marketing strategies, (4) new material research, (5)
pending projects and proposals, and (6) research and development
strategies.

Any Employee who discloses trade secrets or confidential business
information to individuals not employed by TDBBS or to any individuals
who do not have a legitimate need or request to know such
information, will be subject to appropriate disciplinary action, up to and
including termination of employment. Further, Employees' obligations not
to disclose trade secrets or confidential business information continues
after employment ends[.]

*Exhibit* E.

### TDBBS Provides Fabits with a Laptop for Company Business.

50.    TDBBS provided Fabits with an Apple MacBook laptop (the "Laptop") for

his use in carrying out TDBBS business.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

9

51.    Fabits used the Laptop for, among other purposes, sending and receiving emails concerning TDBBS's business, including emails that contained TDBBS's Trade Secret and Confidential Information.

**Fabits Becomes Hostile to TDBBS After the Sales Department is Restructured.**

52.    In the Spring of 2018, TDBBS decided to restructure its sales department. As part of that restructuring, TDBBS planned to hire a new Vice President who would be responsible for company-wide sales. Fabits would then report to the new Vice President, rather than to the Chief Executive Officer, and his focus would return to the Barkworthies independent pet channel.

53.    TDBBS decided also to restructure Fabits' compensation to be more performance based. Under the new structure, a larger portion of Fabits' compensation would come by way of a performance-based bonus, which would afford Fabits the opportunity to earn more money than was possible under his prior compensation structure.

54.    Fabits expressed displeasure at these changes; in fact, he made numerous threats to disparage and otherwise harm TDBBS, including but not limited to the following:

- "I will bust ass to disrupt everything."

- "I will do whatever it takes to protect my family."

- "This is going to get ugly."

- "Every minute I am not doing something I am thinking about how to bring the house down."

- "I will undo everything I have done in the past year."

- "I am going to look for an opportunity to stick it to TDBBS."

- "I will be coming at the company with all I have."

55.    On or about April 25, 2018, TDBBS issued an updated Employee Handbook, which again contained the Confidential Information Policy.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

10

FPDOCS 35059419.1

56. TDBBS directed its employees, including Fabits, to sign the acknowledgment form for the revised Handbook. Fabits refused to sign despite having done so twice in the past.

57. On April 30, 2018, TDBBS's new Vice President of Sales started his employment. From and after that date, Fabits reported to the new Vice President of Sales.

58. On May 2, 2018, the new Vice President of Sales led his first scheduled conference call with the entire sales team; Fabits failed to join the call.

59. Later that same day, Fabits was supposed to join in a two-hour management meeting. He never called in for that meeting, either.

60. The new Vice President of Sales finally was able to reach Fabits by phone on May 3, 2018. Fabits spent the first ten minutes of the call expressing his displeasure with TDBBS.

61. In addition, Fabits missed several weekly sales calls, and members of the sales team reported that Fabits was "checked out."

62. Matters came to a head on May 30, 2018. During a telephone call with Fabits, the new Vice President of Sales asked Fabits to provide certain information regarding sales activities; Fabits refused to do so. Fabits was told that it was his duty, as an employee of TDBBS, to provide the requested information. Fabits replied that he did not care.

63. Given Fabits's ongoing unprofessional and hostile attitude and behavior, TDBBS, on May 31, 2018, told Fabits that he could stay on for another two weeks if he would commit to acting in a professional manner and assisting with any necessary transitions; otherwise, he would need to leave immediately.

64. Fabits did not respond to TDBBS's offer to stay on for the additional two weeks. Consequently, Fabits' employment with TDBBS ended on May 31, 2018.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

FPDOCS 35059419.1

**Fabits Secretly Forwards TDBBS's Trade Secret and Confidential Information to his Personal Gmail.**

65.     TDBBS has learned that, for months leading up to the end of his employment, Fabits was misappropriating TDBBS's Trade Secret and Confidential Information.

66.     As a Vice President of Sales, Fabits received extensive product, performance, and financial data concerning TDBBS, which was highly confidential and would be of significant value to TDBBS's competitors.

67.     For example, Fabits periodically received "lost revenue" reports, which contained detailed information showing, by product and customer, any quantity differences between amounts ordered and amounts shipped.

68.     It appears now that, on several occasions, Fabits emailed these lost revenue reports from his TDBBS company email to his personal Gmail account, usually within hours of receiving them.

69.     True and accurate copies of the emails showing Fabits forwarding the lost revenue reports to his Gmail are attached at *Exhibit F* hereto.

70.     Fabits' misappropriation continued until literally the last few hours of his employment with TDBBS. At 3:32 p.m. on his last day, Fabits sent an email to a member of the sales team requesting, "the latest Master."

71.     The "Master" referred to is the confidential master product information spreadsheet for TDBBS's Barkworthies line, which contains extensive data on every Barkworthies' product, including detailed information on pricing tiers.

72.     As requested, the member of TDBBS's sales team forwarded the Master spreadsheet to Fabits at his TDBBS email.

73.     Fabits then immediately forwarded the Master spreadsheet to his Gmail account.

74.     A true and accurate copy of the email forwarding the Master spreadsheet is attached at *Exhibit G* hereto.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

12

75.     The information in the lost revenue reports and the Master spreadsheet is highly confidential. Those reports and spreadsheets, and the information they contain, are not disclosed outside of TDBBS and, even within TDBBS, their distribution is limited to specific individuals who have a particular TDBBS business need for them.

76.     The information in those reports and spreadsheet would, moreover, be highly valuable to TDBBS's competitors, including Defendant EPI, enabling them adjust their pricing and business strategies to unfairly compete with TDBBS.

77.     There was no possible TDBBS business reason for Fabits to be forwarding lost revenue reports and the Master spreadsheet to his personal Gmail account at all, let alone forwarding the Master spreadsheet in the final two hours of his employment, when he had no duties left to perform for TDBBS.

78.     Upon information and belief, Fabits forwarded himself the lost revenue reports and Master spreadsheet in order to use those documents for the benefit of and/or to disclose those documents to Defendant EPI.

**Fabits Delays Returning the Laptop, and Fails to Return TDBBS's Trade Secret and Confidential Information.**

79.     On June 1, 2018, TDBBS emailed Fabits a prepaid UPS shipping label to be used for returning the Laptop.

80.     On June 7, 2018, TDBBS's counsel sent a letter to Fabits (a true and accurate copy of which is attached at *Exhibit* H hereto), demanding that Fabits return the Laptop, along with any TDBBS confidential information, and reminding Fabits of his obligation to preserve potentially relevant evidence.

81.     Despite repeated demands from TDBBS, Fabits failed and refused to return the Laptop, offering a variety of alleged "excuses," including claims that: he never received the shipping label; he was on vacation (for the entire summer); he was traveling on business; he would not bring the Laptop to a UPS store only five miles from his house; and TDBBS had not provided him with packing supplies (even though TDBBS had agreed to reimburse him for any such supplies).

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

FPDOCS 35059419.1

82.     Finally, in mid-September 2018 – after (as TDBBS now knows) he had started working for Defendant EPI – Fabits agreed to meet a TDBBS sales representative at his house and to deliver the Laptop to that sales representative.

83.     Fabits gave the Laptop to the TDBBS sales representative on Saturday, September 22, 2018.

84.     Fabits also ignored repeated demands by TDBBS to return its Trade Secret and Confidential Information and, upon information and belief, Fabits still is in possession of Trade Secret and Confidential Information that he has not returned.

85.     Upon information and belief, Fabits delayed returning the Laptop, and failed to return TDBBS's Trade Secret and Confidential Information, in order to use the information on the Laptop and other TDBBS Trade Secret and Confidential Information for the benefit of Defendant EPI.

**Defendant EPI Recruits and Hires Fabits to Lead its New Treats and Chews Business and Uses TDBBS's Trade Secret and Confidential Information, Which Fabits Misappropriated From TDBBS.**

86.     TDBBS learned recently that Fabits, while still employed by TDBBS, interviewed with Defendant EPI and provided information and guidance to EPI – *including TDBBS's Trade Secret and Confidential Information and trade secrets* – and advised EPI on how it could compete in the treats and chews business, and particularly in the animal body parts business, *against TDBBS*.



87.

88.

89.

90.

91.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

14

FPDOCS 35059419.1



FPDOCS 35059419.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

102. ██████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████

103.   Fabits "officially" began working for Defendant EPI in or around early August 2018. ████████████████████████████████████████
██████████████████████████████████

104.   However, upon information and belief, Fabits was assisting Defendant EPI in developing its treats and chews business – again, using TDBBS's Trade Secret and Confidential Information – prior to his "official" start date; indeed, while he was still working for TDBBS.

████████████████████████████████████

105.  ████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████

106.  ████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████

## Suddenly Defendant EPI has a Fully Developed Animal Body Parts Line.

107.   On February 4, 2019, a TDBBS representative attended an open house put on by VSI, a distributor of pet products.

108.   At this open house, TDBBS learned that Defendant EPI had apparently developed an entire animal body parts product line – fully branded, developed, designed, manufactured, and packaged – under the trade name, "Fieldcrest Farms," as reflected in the below photograph taken at the open house:



109.   These are precisely the types of animal body parts products that TDBBS markets and sells and that, upon information and belief, Defendant EPI has never previously marketed or sold.

110.   Defendant EPI brought this product line to market on a highly accelerated schedule by relying on TDBBS's Trade Secret and Confidential Information provided by Fabits.

111.   Manufactured, multi-ingredient pet treats like the ones previously sold by Defendant EPI (Healthy Balance, Beastie Bar, and Kettle Creek) are essentially commodity items. By contrast, single-ingredient animal body parts chews are not man-made, factory produced items.

112.   As such, finding and developing relationships with animal body parts suppliers is both critically important and time and labor intensive.

113.   It can be a challenge to find reliable, consistent suppliers, and at reasonable prices. In many cases, this requires locating and using suppliers outside of the United States, which itself adds a layer of time and complexity.

114.   A new entrant into the pet treats and chews business would typically try out many different suppliers before finding one that is suitable. Once such a suitable supplier is found, that relationship becomes extremely valuable and provides a substantial competitive edge.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

17

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

115.   Using natural body parts also presents significant distribution challenges. In particular, natural body parts require more careful handling than processed ingredients to prevent, for example, spoilage and insect problems.

116.   Additionally, chews made from animal body parts are more of a niche market than mass-produced treats and, therefore, require significant time and effort to develop customer relationships.

117.   At a minimum, without using TDBBS's Trade Secret and Confidential Information, it would have taken Defendant EPI eighteen months to fully develop an animal body parts business from the ground up.

118.   Yet, Defendant EPI went from having no material treats and chews business to selling a complete animal body parts line within six months of hiring Fabits (or nine months since first interviewing Fabits). EPI was able to jump start its new line of business on this accelerated time table because it did not have to invest the time or resources which are normally required to launch a new pet treats and chews business. Instead, EPI used Trade Secret and Confidential Information that Fabits stole from TDBBS to eliminate or substantially reduce the time, labor and expense that otherwise would have been needed to launch EPI's new business venture.

119.   For example, Fabits could substantially shorten Defendant EPI's business development cycle by leveraging, for EPI, the supplier and customer relationships that he had developed through his employment with TDBBS; relationships that were developed, for TDBBS, using TDBBS's resources, including its Trade Secret and Confidential Information.

120.   In addition, the Trade Secret and Confidential Information that Fabits misappropriated and emailed to himself shortly before leaving TDBBS would be enormously helpful to a business seeking to compete with TDBBS in the animal body parts treat and chew market.

FPDOCS 35059419.1

121.   In particular, TDBBS's Master spreadsheet – which Fabits accessed and emailed to himself literally in the last hours of his last day – is essentially TDBBS's "Bible" for product and pricing information.

**Defendant EPI Secured at Least One Distributor for its Fieldcrest Farms Line.**

122.   TDBBS has discovered also that Defendant EPI is selling more than 30 items in its Fieldcrest Farms line through Bradley Caldwell, Inc. ("BCI"), a distributor of pet products.

123.   BCI is holding its annual Spring Trade Show on February 26-27, 2019.

124.   Defendant EPI is a vendor at the Spring Trade Show.

125.   BCI is advertising discounted pricing on Defendant EPI's Fieldcrest Farms products for open house purchases.

126.   A true and accurate copy of the BCI flyer and price list for Fieldcrest Farms is attached at *Exhibit* L hereto.[1]

127.   Upon information and belief, Defendant EPI is planning to market its new animal body parts line at the BCI Spring Trade Show.

128.   Upon information and belief, Fabits is planning to attend the BCI Spring Trade Show on behalf of Defendant EPI, and to assist EPI in marketing its new animal body parts line at the BCI Spring Trade Show.

**Defendant EPI Already Is Telling its New Product Line, Through Fabits, at Trade Shows, Including to TDBBS's Customers**

129.   While at the VSI open house, Fabits solicited a number of TDBBS customers to purchase treats and chews items from Defendant EPI, one of which informed the TDBBS representative that his company was going to buy from EPI.

**EPI Is Poised to Sell its Illegally Developed Product Line, Next Month, at the World's Largest Pet Products Trade Show.**

130.   On March 20-22, 2019, the Global Pet Expo will take place in Orlando,

---

[1] http://bci.imanagementsoftware.com/bciae/Order%20Forms/H19PCBook_PC122L.pdf.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

1    Florida.

2          131.   Global Pet is the largest, most important trade show in the pet products

3    industry.

4          132.   TDBBS is an exhibitor at Global Pet.

5          133.   Global Pet would be the biggest and most important platform of the year

6    for Defendant EPI to conduct a full-scale launch of its illegally-developed animal body

7    parts line, which is built on a foundation of Trade Secret and Confidential Information

8    stolen from TDBBS.

9          134.   Many TDBBS customers and potential customers will be attending Global

10   Pet.

11         135.   Upon information and belief, Defendant EPI is planning to aggressively

12   market its new animal body parts line at Global Pet.

13         136.   Upon information and belief, Fabits is planning to attend Global Pet on

14   behalf of Defendant EPI, and to assist EPI in marketing its new animal body parts line at

15   Global Pet.

16                                **COUNT I**

17             **Temporary Restraining Order and Injunctive Relief**

18         137.   TDBBS incorporates the allegations set forth in the preceding paragraphs

19   as if set forth in full herein.

20         138.   TDBBS is entitled to temporary, preliminary, and permanent injunctive

21   relief preventing any actual or threatened misappropriation and misuse of its Trade

22   Secret and Confidential Information by EPI and/or its agents, and other persons who are

23   in active concert or participation with them (collectively, "Covered Persons").

24         139.   This injunctive relief should include, without limitation, an Order

25   prohibiting the Covered Persons from using or disclosing any of TDBBS's Trade Secret

26   and Confidential Information in any manner.

27         140.   Further, the injunctive relief should include an Order requiring the

28   Covered Persons to return to TDBBS, and not retain in their possession, custody, or

control, any and all Trade Secret and Confidential Information of TDBBS, and to certify under oath that all Trade Secret and Confidential Information has been returned.

141.   In addition, TDBBS is entitled to temporary, preliminary, and permanent injunctive relief restraining the Covered Persons, for a period of 18 months, from conducting, carrying on, or engaging in any pet treats and chews business, including but not limited to the Fieldcrest Farms line, that was developed and/or implemented, in whole or in part, directly or indirectly, with the assistance and/or input of Fabits and/or through the use of any TDBBS Trade Secret and Confidential Information.

142.   TDBBS also is entitled to temporary, preliminary, and permanent injunctive relief prohibiting Fabits or anyone acting at his direction or with his assistance from attending either the 2019 Bradley Caldwell Spring Trade Show or the 2019 Global Pet Expo.

143.   TDBBS has a substantial likelihood of prevailing on the merits of its claims.

144.   Unless the Covered Persons are enjoined from the conduct described herein, there is a substantial threat that TDBBS will continue to suffer irreparable harm, including loss and misuse of its Trade Secret and Confidential Information, goodwill, and financial losses that presently are not calculable.

145.   The irreparable harm that TDBBS will suffer if injunctive relief is denied outweighs the potential harm (if any) to Defendant EPI if injunctive relief is granted.

146.   Granting the requested injunctive relief will not disserve the public interest.

147.   TDBBS has no adequate remedy at law.

148.   Consequently, TDBBS is entitled to injunctive relief as set forth herein.

## COUNT II

### Violation of Defend Trade Secrets Act, 18 U.S.C. §1836

149.   TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

21

150. The information, documents, and materials which Defendant EPI has stolen and misappropriated from TDBBS constitute trade secrets within the meaning of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836.

151. TDBBS is headquartered in Virginia, but regularly transacts business in states other than Virginia, including in person and by phone, internet, and mail. TDBBS's trade secrets relate to this business and, thus, are frequently used by TDBBS in interstate commerce.

152. Defendant EPI acquired TDBBS's trade secrets by improper means, including but not limited to knowingly receiving and using TDBBS's trade secrets obtained by Fabits in violation his fiduciary duty of loyalty to TDBBS, including but not limited to his duty not to use or disclose TDBBS's trade secrets, except in the course of his employment with and for the benefit of TDBBS.

153. Defendant EPI, in fact, encouraged and induced Fabits to disclose TDBBS's trade secrets to EPI, in breach of Fabits' duty not to do so, and despite knowing that Fabits had a duty not to disclose TDBBS's trade secrets.

154. Defendant EPI has used TDBBS's trade secrets disclosed to it by Fabits in furtherance of its own interests and against TDBBS's interests, and without TDBBS's consent.

155. Defendant EPI's acts of misappropriation were willful and malicious.

156. As a direct and proximate result of Defendant EPI's acts of misappropriation, TDBBS has suffered and will suffer irreparable harm and damages. Moreover, EPI has gained an unfair competitive advantage and other unjust enrichment through the misappropriation of TDBBS's trade secrets.

157. TDBBS is entitled to injunctive relief against Defendant EPI to prohibit its actual and/or threatened misappropriation and use of TDBBS's trade secrets.

158. TDBBS is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

22

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

1    the misappropriation that is not addressed in computing damages for actual loss, and/or

2    damages measured by imposition of liability for a reasonable royalty.

3        159.   As a result of Defendant EPI's willful and malicious misappropriation,

4    TDBBS is entitled to and requests exemplary damages in an amount not more than two

5    times TDBBS's actual damages, plus reasonable attorneys' fees.

6                                 **COUNT III**

7    **Violation of the Arizona Uniform Trade Secrets Act, A.R.S. §44-401 _et seq._**

8        160.   TDBBS incorporates the allegations set forth in the preceding paragraphs

9    as if set forth in full herein.

10       161.   The information, documents, and materials which Defendant EPI has

11   stolen and misappropriated from TDBBS constitute trade secrets within the meaning of

12   the Arizona Uniform Trade Secrets Act ("AUTSA"), A.R.S. §44-401 et seq.

13       162.   Defendant EPI acquired TDBBS's trade secrets by improper means,

14   including but not limited to knowingly receiving and using TDBBS's trade secrets

15   obtained by Fabits in violation his fiduciary duty of loyalty to TDBBS, including but not

16   limited to his duty not to use or disclose TDBBS's trade secrets, except in the course of

17   his employment with and for the benefit of TDBBS.

18       163.   Defendant EPI, in fact, encouraged and induced Fabits to disclose

19   TDBBS's trade secrets to EPI, in breach of Fabits' duty not to do so, and despite

20   knowing that Fabits had a duty not to disclose TDBBS's trade secrets.

21       164.   Defendant EPI has used TDBBS's trade secrets disclosed to it by Fabits in

22   furtherance of its own interests and against TDBBS's interests, and without TDBBS's

23   consent.

24       165.   Defendant EPI's acts of misappropriation were willful and malicious.

25       166.   As a direct and proximate result of Defendant EPI's acts of

26   misappropriation, TDBBS has suffered and will suffer irreparable harm and damages.

27   Moreover, EPI has gained an unfair competitive advantage and other unjust enrichment

28   through the misappropriation of TDBBS's trade secrets.

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

167. TDBBS is entitled to injunctive relief against Defendant EPI to prohibit its actual and/or threatened misappropriation and use of TDBBS's trade secrets.

168. TDBBS is entitled to and requests an award of damages in its favor for actual loss caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss, and/or damages measured by imposition of liability for a reasonable royalty.

169. As a result of Defendant EPI's willful and malicious misappropriation, TDBBS is entitled to and requests exemplary damages in an amount not more than two times TDBBS's actual damages, plus reasonable attorneys' fees.

## COUNT IV

### Aiding and Abetting Breach of Fiduciary Duty/Duty of Loyalty

170. TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

171. As an employee and executive of TDBBS, Fabits owed TDBBS a fiduciary duty and duties of loyalty and due care.

172. Fabits's duties of loyalty and due care to TDBBS included, without limitation, duties: not to act in opposition to TDBBS's interests; not to use his position with TDBBS for personal gain at the expense of TDBBS; and not to use TDBBS's property and information, including but not limited to the Laptop and TDBBS's confidential information, for his own purpose or for the purpose of any third party.

173. Fabits violated his fiduciary duties of loyalty and due care to TDBBS by, inter alia, misappropriating, misusing, and exploiting TDBBS's confidential information for his own benefit and for the benefit of Defendant EPI.

174. Defendant EPI had knowledge of and induced some or all of Fabits's wrongful conduct, and knew that such conduct constituted a breach of Fabits's duty to TDBBS.

175. By its actions as alleged herein, Defendant EPI substantially assisted and/or encouraged Fabits in breaching his fiduciary duty and duty of loyalty to TDBBS.

24

176.   TDBBS has suffered damages as a direct and proximate result of Defendant EPI's aiding and abetting of Fabits's breaches of his fiduciary duties of loyalty and due care to TDBBS.

177.   Defendant EPI's actions as alleged herein were aggravated, outrageous, reprehensible, spiteful, oppressive, intolerable, and/or malicious, and were undertaken with the intent to injure TDBBS, and/or with deliberate indifference to TDBBS's rights, and/or with conscious disregard of the unjustifiably substantial risk of significant harm to TDBBS. EPI acted with an evil hand guided by an evil mind and, therefore, TDBBS is entitled to an award of punitive damages.

## COUNT V

### Civil Conspiracy

178.   TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

179.   By their actions as alleged herein, Fabits and Defendant EPI agreed to accomplish an unlawful purpose or to accomplish a lawful objective by unlawful means.

180.   Specifically, Defendant EPI agreed to employ Fabits, on the condition and for the purpose that Fabits would disclose TDBBS's confidential information to EPI, and would assist EPI in using TDBBS's confidential information to develop a pet treats and chews business for EPI.

181.   Fabits and Defendant EPI engaged in wrongful acts in furtherance of their wrongful agreement, including but not limited to the misappropriation of TDBBS's confidential information, as alleged herein.

182.   TDBBS has suffered damages as a direct and proximate result of Defendant EPI's conspiracy with Fabits.

183.   Defendant EPI's actions as alleged herein were aggravated, outrageous, reprehensible, spiteful, oppressive, intolerable, and/or malicious, and were undertaken with the intent to injure TDBBS, and/or with deliberate indifference to TDBBS's rights, and/or with conscious disregard of the unjustifiably substantial risk of significant harm

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

FPDOCS 35059419.1

to TDBBS. EPI acted with an evil hand guided by an evil mind and, therefore, TDBBS is entitled to an award of punitive damages.

## COUNT VI

### Tortious Interference with Business Expectancy

184.   TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

185.   TDBBS has contractual and/or advantageous business relationships with, among others, its customers and potential customers.

186.   At all times relevant hereto, Defendant EPI had knowledge of these contractual and/or advantageous business relationships.

187.   By its wrongful actions as alleged herein, including but not limited to the misappropriation of TDBBS's confidential information in order to unfairly compete with TDBBS, Defendant EPI intentionally, by improper means and motive, and without privilege or legal justification, interfered with TDBBS's contractual and/or advantageous business relationships.

188.   TDBBS has suffered damages as a direct and proximate result of Defendant EPI's tortious interference.

189.   Defendant EPI's actions as alleged herein were aggravated, outrageous, reprehensible, spiteful, oppressive, intolerable, and/or malicious, and were undertaken with the intent to injure TDBBS, and/or with deliberate indifference to TDBBS's rights, and/or with conscious disregard of the unjustifiably substantial risk of significant harm to TDBBS. EPI acted with an evil hand guided by an evil mind and, therefore, TDBBS is entitled to an award of punitive damages.

## COUNT VII

### Unfair Competition

190.   TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

191.   By its actions as alleged herein, including but not limited to the

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

26

FPDOCS 35059419.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

misappropriation and misuse of TDBBS's confidential information, Defendant EPI has unfairly competed, and is continuing to unfairly compete, with TDBBS.

192.    TDBBS has suffered damages as a direct and proximate result of Defendant EPI's acts of unfair competition.

193.    Defendant EPI's actions as alleged herein were aggravated, outrageous, reprehensible, spiteful, oppressive, intolerable, and/or malicious, and were undertaken with the intent to injure TDBBS, and/or with deliberate indifference to TDBBS's rights, and/or with conscious disregard of the unjustifiably substantial risk of significant harm to TDBBS. EPI acted with an evil hand guided by an evil mind and, therefore, TDBBS is entitled to an award of punitive damages.

## COUNT VIII

### Unjust Enrichment

194.    TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

195.    By its actions as alleged herein, including but not limited to its misappropriation of TDBBS's confidential information in order to jump start its competing pet treats and chews business, and thereby induce customers and potential customers of TDBBS to do business with Defendant EPI and to terminate or reduce their business with TDBBS, EPI has been and will be enriched and, correspondingly, TDBBS has been and will be impoverished.

196.    Defendant EPI's enrichment and TDBBS's impoverishment are and have been without justification.

197.    Justice and equity demand that the money and benefits by which Defendant EPI has been enriched in fact belong to TDBBS.

198.    TDBBS lacks a legal remedy sufficient to redress Defendant EPI's unjust enrichment.

FPDOCS 35059419.1

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

**COUNT IX**

**Respondeat Superior/Vicarious Liability**

199.   TDBBS incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

200.   Fabits acted within the course and scope of his duties and authority as an agent and employee of Defendant EPI when committing the wrongful acts alleged herein.

201.   Fabits acted with the purpose and intent to serve and benefit Defendant EPI when committing the wrongful acts alleged herein.

202.   Fabits benefited Defendant EPI when committing the wrongful acts alleged herein.

203.   Defendant EPI knew or should have known of Fabits's wrongful conduct and authorized, encouraged, or permitted Fabits to commit the wrongful acts alleged herein.

204.   TDBBS has suffered damages as a result of the wrongful conduct committed by Defendant EPI's agent and employee Fabits, and EPI is liable to TDBBS under principles of respondeat superior and vicarious liability for Fabits's wrongful conduct.

WHEREFORE, Plaintiff TDBBS, LLC respectfully requests judgment in its favor against Defendant Ethical Products, Inc. as follows:

1.   Entering a temporary restraining order, and preliminary and permanent injunctions, ordering that:

(a)   EPI, its agents, servants, employees, representatives, and attorneys, and other persons who are in active concert or participation with any of the foregoing, including but not limited to Fabits (collectively, "Covered Persons") are restrained and enjoined from, directly or indirectly, disclosing or making any use of any Trade Secret and Confidential Information of TDBBS, including but not limited to business plans; pricing, marketing, and distribution strategies; product, branding, packaging, and

28

advertising development; brand portfolio strategies; vendor/supplier relationships; global supply chain; customer lists and preferences; business partner relationships and agreements; discount structures; channel development; personnel; product formulas; and intellectual property;

(b)     the Covered Persons must return to TDBBS, within 48 hours, any Trade Secret and Confidential Information that is in their possession, custody, or control (including but not limited to Trade Secret and Confidential Information in paper form and in electronic form, wherever and however stored, including but not limited to personal computers, cloud storage, external storage media, smart phones and other handheld devices, and email accounts) and to the extent that any such information is maintained in electronic form must, after such information is returned to TDBBS, purge or destroy any electronic record of such information, in a manner that does not allow the Trade Secret and Confidential Information to be retrieved or restored;

(c)     the Covered Persons must certify to TDBBS, under oath, that the Trade Secret and Confidential Information has been thus returned and purged or destroyed;

(d)     the Covered Persons are restrained and enjoined from directly or indirectly selling, exhibiting, marketing, advertising, or otherwise promoting EPI's Fieldcrest Farms line, or any other animal body parts products, at the 2019 BCI Annual Spring Expo on February 26-27, 2019 in Hershey, Pennsylvania, or at the 2019 Global Pet Expo on March 20-22, 2019 in Orlando, Florida;

(e)     until further Order of the Court, the Covered Persons are restrained and enjoined from directly or indirectly conducting, carrying on, or engaging, in any manner, in any pet treats and chews business that was developed and/or implemented, in whole or in part, directly or indirectly, with the assistance and/or input of Fabits and/or through the use of any TDBBS Trade Secret and Confidential Information, including but not limited to EPI's Fieldcrest Farms line (the "Prohibited Business"); and

(f)     after briefing and an opportunity to heard on TDBBS's Motion for

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

29

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

Preliminary Injunction, the Covered Persons are restrained and enjoined, for a period of 18 months, from directly or indirectly conducting, carrying on, or engaging, in any manner, in any Prohibited Business.

2.     Awarding TDBBS compensatory damages in an amount to be proved at trial;

3.     Disgorging amounts by which Defendant EPI has been unjustly enriched, and awarding those amounts to TDBBS;

4.     Awarding TDBBS exemplary damages of two times its actual damages for Defendant EPI's violations of DTSA and AUTSA;

5.     Awarding TDBBS punitive damages in an amount sufficient to punish Defendant EPI for the conduct alleged herein and to deter others from engaging in similar conduct;

6.     Awarding TDBBS its attorneys' fees and costs;

7.     Awarding TDBBS prejudgment interest on the foregoing sums at the highest rate permitted by law;

8.     Awarding interest on the foregoing sums at the highest rate permitted by law from the date of judgment until paid; and

9.     Granting TDBBS such other and further relief as the Court deems proper.

DATED this 25th day of February 2019.

FISHER & PHILLIPS LLP


By_s/ Alanna R. Brook
    Pavneet Singh Uppal
    Alanna R. Brook
    Lori Guner
    3200 N. Central Avenue, Suite 805
    Phoenix, Arizona 85012-2407
    Attorneys for Plaintiff TDBBS, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Avrum Elmakis, Executive Chairman of TDBBS, LLC, hereby state that I have read the foregoing **VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**, and that I know the factual allegations set forth herein in paragraphs 1 to 136 to be true based on personal knowledge, or on information available to me which I believe to be true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 25th day of February 2019.

_____
Avrum Elmakis

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400

33

FPDOCS 35056696.1