# INDEX OF EXHIBITS

*TDBBS, LLC v. Ethical Products, Inc.*

**Exhibit A**   Under Seal

**Exhibit B**   TDBBS Non-Solicitation and Confidentiality Agreement

**Exhibit C**   5.1.17 Handbook Acknowledgement signed by Timothy Fabits

**Exhibit D**   7.30.17 Handbook Acknowledgment signed by Timothy Fabits

**Exhibit E**   TDBBS Confidentiality Policy

**Exhibit F**   Lost Revenue Emails

**Exhibit G**   5.31.18 Email from Timothy Fabits

**Exhibit H**   6.7.18 Demand Letter

**Exhibit I**   Under Seal

**Exhibit J**   Under Seal

**Exhibit K**   Under Seal

**Exhibit L**   BCI Flyer

# Exhibit A

**DOCUMENT FILED UNDER SEAL**

# Exhibit B

## NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

This NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT ("Agreement") is made and entered into this 17th day of March 2017, by and between _____ ("Employee"), and **TDBBS, LLC**, a Delaware limited liability company, including its parent company, subsidiaries, affiliates, successors and assigns (collectively, "the "Company").

In consideration of the Employee's employment or continued employment with the Company beyond the date of this Agreement, the mutual promises and obligations of the parties contained herein, and for other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the parties do hereby agree as follows:

1.     **Employment at Will.** Company hereby employs the Employee and Employee hereby accepts employment or continued employment upon the terms and conditions set forth herein. Employee and Company both acknowledge and agree the employment relationship conferred hereunder is employment at will and either the Employee or the Company may terminate such employment relationship at any time, for any reason, with or without cause.

2.     **No Conflicts; Third Party Confidential Information.** Employee warrants that Employee is under no other contractual or legal obligation that would preclude Employee from performing Employee's duties with Company. Employee further agrees that Employee will not provide to Company, or utilize in the scope of Employee's employment with Company, any confidential information of a third party without the consent of such third party.

3.     **Confidential Information.** During Employee's employment with the Company and at all times after the date upon which Employee shall cease for any reason whatsoever to be an employee of the Company (the "Employment Cessation Date"), Employee agrees not to use or disclose any Confidential Information (as defined below), except for the benefit of the Company and to authorized representatives of the Company in the scope of Employee's employment with the Company, or as required by a governmental or judicial authority.

For the purposes of this Agreement, "Confidential Information" shall expressly include, but shall not be limited to, information concerning the Company's trade secrets, business operations, business records, methods, designs, know-how, promotion or marketing plans, marketing efforts, employee information, customer lists, customer services, vendor/supplier lists, vendor/supplier pricing arrangements with Company, project development plans or redevelopment activities or plans, pricing information, financial information, improvements, inventions, technologies, theories, formulas, plans, research, operations, policies, procedures, techniques, processes, works and other innovations of any kind conceived, developed, made or reduced to practice by the Company (including work product developed by Employee pursuant to or in connection with Employee's employment with the Company or otherwise belonging to the Company), whether or not any of the foregoing is patentable or copyrightable; the identity of the Company's actual and potential customers and strategic partners, commercial partners, agents, subcontractors or vendors; and, customer information of the Company.

Confidential Information shall also include, but shall not be limited to, information acquired by the Company and/or the Employee regarding Company's acquisition activities or plans. Specifically, from time to time, the Company may be involved in acquisition activities whereby the Company and the Employee may be given access to information disclosed by a third-party entity. In such an event, Employee agrees that Employee will treat such information provided by the third-party entity or entities involved in acquisition activities with the Company as Confidential Information. With respect to such Confidential Information obtained by, or provided to, the Employee, Employee shall not use or disclose, without prior written authorization from the Company, such information to any other party.

Provided, however, that Confidential Information does not include any of the foregoing items that become publicly known and made generally available through no wrongful or negligent act of Employee or of others who were under confidentiality obligations as to the item or items involved. This provision shall not diminish the Company's statutory and other protections for trade secrets and other proprietary information.

Upon termination of Employee's employment with the Company, Employee shall immediately return to the Company all of the Company's property including, without limitation, all Confidential Information in Employee's possession or control. Moreover, Employee agrees to immediately return or destroy all Confidential Information upon written direction from the Company.

4.      **Non-Solicitation of Clients.** Throughout any period during which Employee is an employee of Company and for a period of eighteen (18) months following the Employment Cessation Date, Employee shall not, on Employee's own behalf or on behalf of any third party, personally or through another under Employee's direction or control, except for the benefit of the Company in the course of Employee's employment with Company, solicit to sell or sell products that compete with the Company's products to any Client (as defined below). The term "Client" shall mean any individual or entity that (i) purchases and resells products that compete with the Company's products to the general public, including but not limited to, pet supply stores and pet food suppliers, and (ii) has purchased the Company's products in the twelve (12) month period immediately preceding the Employment Cessation Date, provided that Employee had contact with such Client or provided services, assistance or support, or had knowledge of such Client's Confidential Information due to Employee's employment with the Company. However, nothing in this section is intended to prohibit Employee from selling any products to persons or entities who are not Clients.

5.      **Non-Solicitation of Workers.** Throughout any period during which Employee is an employee of Company, and for a period of twelve (12) months from and after the Employment Cessation Date, Employee shall not, on Employee's own behalf or on behalf of any third party, personally or through another under Employee's direction or control, recruit or hire, or assist any third party or entity in the recruiting or hiring of any Worker or induce any Worker to cease employment with the Company. For purposes of this Agreement, "Worker" shall mean any individual who was employed by the Company at any point during the twelve-month (12) period prior to the Employment Cessation Date.

2

The Parties acknowledge and agree that this Section 5 does not prohibit and shall not be construed to prohibit general advertising or solicitation by Employee or his agent that is directed to the general public and is not specifically directed to a Worker or Workers.

6. **Non-Solicitation of Suppliers.** Throughout any period during which Employee is an employee of the Company, and for a period of twenty-four (24) months from and after the Employment Cessation Date, Employee covenants and agrees that, except for the benefit of the Company in the course of Employee's employment with Company, Employee will not purchase, distribute, or solicit the purchase or distribution of, products that are competitive with the products of the Company or are integral to the manufacture of the Company's products, from any Supplier (as defined below) for the purpose of manufacturing or selling products that compete with the Company's products. For purposes of this Section 6, "Supplier" shall mean any individual or entity that, at any time within the twelve (12) months immediately preceding the Employment Cessation Date, has sold or distributed products or materials to the Company in the ordinary course of the Company's business that are integral to the manufacture of Company's products. Notwithstanding anything to the contrary contained herein, the Parties acknowledge and agree that nothing in this Section 6 shall prohibit or be construed to prohibit Employee's purchase from such vendors for purposes that are not competitive with the Company's business.

7. **Remedies.** The parties hereto agree that given the nature of the position held by Employee with the Company, as well as the highly competitive nature of Company's business, the restrictive covenants set forth above are reasonable and necessary for the protection of the significant investment of the Company in developing, maintaining and expanding its business. Accordingly, the parties to this Agreement further agree that in the event of any breach by the Employee of any of the provisions above, that monetary damages alone will not adequately compensate the Company for its losses and, therefore, that it may seek any and all legal or equitable relief available to it, specifically including, but not limited to, injunctive relief, and may hold the Employee liable for all damages, including actual and consequential damages, costs and expenses, including legal costs and reasonable attorneys' fees incurred by the Company as a result of such breach. The parties further acknowledge their intention that this Agreement shall be enforceable to the fullest extent permitted by law.

8. **Survival of Covenants.** The agreements and covenants made by Employee in, and the obligations of Employee under, Sections 3, 4, 5, and 6 shall survive the termination of Employee's employment with the Company. Each such agreement and covenant by Employee shall be construed as a covenant and agreement independent and separable of any other provision herein, and the existence of any claim or cause of action by Employee against the Employer shall not constitute a defense to the enforcement of the provisions of any such covenant or agreement.

9. **Binding Effect/Assignment.** This Agreement shall be binding upon and inure to the benefit of the Company and Employee and their respective heirs, legal representatives, executors, administrators, successors and assigns. Neither party shall be permitted to assign any portion of this Agreement, with the sole exception that the Company shall be permitted to assign this Agreement to any successor-in-interest thereof, including without limitation, by way of merger, reorganization, or sale of all or substantially all of the assets of the Company.

**10.   Return of Company Property.** On the Employment Cessation Date, or at any earlier time at the request of the Company, Employee agrees to return all Company property, including but not limited to, all documents and all copies and reproductions thereof, including electronic copies, as well as all Confidential Information and Proprietary Information.

**11.   Modification of Agreement.** Any modification of this Agreement shall be binding only if evidenced in writing and signed by both parties.

**12.   Severability.** The invalidity of any portion of this Agreement shall not be deemed to affect the validity of any other provisions. In the event that any provision of this Agreement is held to be invalid, the parties agree that the remaining provisions shall be deemed in full force and effect as if they had been executed by both parties subsequent to the expungement of the invalid provision. Further, if any part or any provision of this Agreement shall be determined to be invalid or unenforceable by reason of the extent, duration or geographical scope thereof, or otherwise, then the parties agree that the court making such determination may reduce such extent, duration or geographical scope, or other provisions thereof, and in its reduced form such part or provision shall then be enforceable in the manner contemplated hereby.

**13.   Non-Waiver.** The failure of either the Company or Employee, whether purposeful or otherwise, to exercise in any instance any right, power or privilege under this Agreement or under law shall not constitute a waiver of any other right, power or privilege, nor of the same right, power or privilege in any other instance. Any waiver by the Company or by Employee must be in writing and signed by either Employee or an officer of the Company.

**14.   Governing Law.** This Agreement shall be governed by, construed, and enforced in accordance with the laws of the Commonwealth of Virginia. Any suit brought by either party against the other party for claims arising out of this Agreement shall be brought exclusively in the Circuit Court for Chesterfield County, Virginia or the United States District Court for the Eastern District of Virginia, Richmond Division.

**15.   Entire Agreement.** This Agreement shall constitute the entire agreement between the parties with respect to the subject matter contained herein, and any prior understandings or agreements between the parties shall not be binding upon either party.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF, Employee and the Company have caused this Agreement to be executed and sealed as of the date first appearing above.**

**[EMPLOYEE]**                                        **TDBBS, LLC**

By: _____          By: _____

                                                          Its: _CEO_____

Dated: _____3/17/2017_____          Dated: __3|17|2017_____

20625837_2

# Exhibit C

Receipt of Employee Handbook

The Employee Handbook, or Handbook, is a compilation of personnel policies, practices and procedures currently in effect at Best Bully Sticks. TDBBS is an Equal Opportunity Employer.

This Handbook is designed to introduce Employees to the organization, familiarize you with Company policies as they pertain to you as an Employee, provide general guidelines on work rules, disciplinary procedures and other issues related to your employment, and to help answer many of the questions that may arise in connection with your employment. This Handbook and any other provisions contained herein do not constitute a guarantee of employment or an employment contract, express or implied. You understand that your employment is "at-will" and that your employment may be terminated for any reason, with or without cause, and with or without notice. Only authorized representative(s) of the Company have the authority to enter into a signed, written agreement guaranteeing employment for a specific term. This Handbook is intended solely to describe the present policies and working conditions at the Company. This Handbook does not claim to include every conceivable situation; it is merely meant as a guideline. Federal, state, and/or local laws will take precedence over Company policies, where applicable.

Personnel policies are applied at the discretion of Management. In addition, the Company reserves the rights to change, withdraw, apply, or amend any of our policies or benefits, including those covered in this Handbook, at any time. The Company may notify you of such changes via a printed memo, notice, amendment to or reprinting of this Handbook, or by another reasonable means, but may, in its discretion make such changes at any time, with or without notice and without a written revision of this Handbook.

This Handbook replaces all previous TDBBS handbooks, guides, and supplements that have been published prior to February 2016.

By signing below, you acknowledge that you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it. Furthermore, you acknowledge that you are employed "at-will" and that this Handbook is neither a contract of employment nor a legal document.

_____          _5.1.17_____
Signature                                                          Date

_Timothy P. Faberts_____
Please print your full name

# Exhibit D

### Receipt and Acknowledgement of the Employee Handbook

The Employee Handbook, or Handbook, is a compilation of personnel policies, practices and procedures currently in effect at TDBBS, LLC.  TDBBS is an Equal Opportunity Employer.

This Handbook is designed to introduce Employees to the organization, familiarize you with Company policies as they pertain to you as an Employee, provide general guidelines on work rules, disciplinary procedures and other issues related to your employment, and to help answer many of the questions that may arise in connection with your employment. This Handbook and any other provisions contained herein do not constitute a guarantee of employment or an employment contract, express or implied.  You understand that your employment is "at-will" and that your employment may be terminated for any reason, with or without cause, and with or without notice.  Only authorized representative(s) of the Company have the authority to enter into a signed, written agreement guaranteeing employment for a specific term.  This Handbook is intended solely to describe the present policies and working conditions at the Company.  This Handbook does not claim to include every conceivable situation; it is merely meant as a guideline. Federal, state, and/or local laws will take precedence over Company policies, where applicable.

Personnel policies are applied at the discretion of Management. In addition, the Company reserves the rights to change, withdraw, apply, or amend any of our policies or benefits, including those covered in this Handbook, at any time.  The Company may notify you of such changes via a printed memo, notice, amendment to or reprinting of this Handbook, or by another reasonable means, but may, in its discretion make such changes at any time, with or without notice and without a written revision of this Handbook.

This Handbook replaces all previous TDBBS handbooks, guides, and supplements that have been published prior to July 2017.

By signing below, you acknowledge that you have received a copy of the TDBBS Employee Handbook and understand that it is your responsibility to read and comply with the policies contained therein and any revisions made to it.  Furthermore, you acknowledge that you are employed "at-will" and that this Handbook is neither a contract of employment nor a legal document.


| | |
|---|---|
| _____ | 7/20/2017 |
| Signature | Date |


| |
|---|
| _Timothy Fabits_ |
| Employee Name (Print) |

# Exhibit E

- Excessive absenteeism, tardiness, sleeping, or malingering on the job;
- Failure to cooperate in a TDBBS investigation.

Notwithstanding this list, employment with TDBBS is at the mutual consent of TDBBS and the Employee, and either party may terminate that relationship at any time, with or without cause or advanced notice.

Protection of Company Assets

Employees should protect TDBBS assets and ensure their proper use. Funds and assets of TDBBS, both tangible and intangible, must be used only for legitimate business purposes of TDBBS and only by authorized Employees or consultants. Intangible assets include intellectual property such as trade secrets, patents, trademarks, copyrights, business, marketing, sales, and service plans, TDBBS records, salary information, and any unpublished financial data and reports. Unauthorized altercation, destruction, use, disclosure, distribution, or disposal of TDBBS assets violates this Code. Employees should protect and ensure efficient use of TDBBS assets. The theft and waste of TDBBS assets have a direct impact on TDBBS profitability, and all TDBBS assets should only be used for legitimate business purposes.

Confidential Information, Trade Secrets, Intellectual Property

The protection of confidential business information, intellectual property and trade secrets is vital to the interests and the success of TDBBS. Trade secrets may include information regarding the development of systems, processes, products, know-how, and technology.  Intellectual property may include, but is not limited to, assignment of inventions, patent and copyright information, and trademarks.  Confidential business information includes, but is not limited to: (1) customer lists, (2) price lists and financial information (not including non-managerial compensation or wage information), (3) marketing strategies, (4) new material research, (5) pending projects and proposals, and (6) research and development strategies.

Any Employee who discloses trade secrets or confidential business information to individuals not employed by TDBBS or to any individuals who do not have a legitimate and authorized need or request to know such information, will be subject to appropriate disciplinary action, up to and including termination of employment. Further, Employees' obligations not to disclose trade secrets or confidential business information continues after employment ends, although an Employee is not prohibited from reporting possible violations of federal law or regulation to any government agency or self-regulatory organization or making disclosures that are protected under the whistleblower provisions of federal law regulation. In accordance with the Defend Trade Secrets Act of 2016, an Employee will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made in confidence federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

TDBBS is engaged in business which requires that a strict code of confidentiality of information be maintained. No Employee will store information outside of the Company (either in written or electronic form) about any matter pertaining to the conduct of the Company's business. No information regarding any customer information (i.e. name, financial information, etc.) or pricing structures shall be given to any customer, competitor, or vendor without proper manager authorization. No information regarding selling prices to one customer, or vendor shall be given to another customer or vendor.

In addition, idle gossip or unauthorized dissemination of confidential information within the Company, such as personal information, financial information, etc. is prohibited.

Compliance with these standards of business ethics, conduct and appropriately handling of proprietary and confidential information is the responsibility of every one of our Employees. Disregarding or failing to comply with this comprehensive policy could lead to disciplinary action, up to and including possible termination of employment.

<u>Conflict of Interest Prohibited</u>

Employees must maintain the highest of ethical standards in the conduct of TDBBS affairs. Thus, Employees should avoid any situation which involves or may involve a conflict between their personal interests and the interests of the Company. Employees are required to avoid any relationship with other individuals or organizations that might impair or appear to impair, the proper performance of their TDBBS-related responsibilities. Employees must act in the best interest of the Company when dealing with customers, contractors, competitors, or any other person doing or seeking to do business with the Company. Employees must make full and prompt disclosure in writing to the CEO or Human Resources, of any potential situation that may involve a conflict of interest. Such conflicts include, but are not limited to, the following examples:

- Ownership by an Employee or by a member of his/her family of an interest in any outside enterprise which does or seeks to do business with or is a competitor of TDBBS. Employees should notify Human Resources of any such potential conflict and refrain from such activity until the conflict situation has been reviewed by TDBBS' CEO or General Counsel.
- Serving as a Director, Officer, Partner, Consultant, or in a Managerial or technical capacity with an outside enterprise which does or is seeking to do business with or who is a competitor of the Company.
- Employees have a full-time and continuing duty of loyalty to TDBBS and must avoid activities and relationships that are incompatible with their employment to the Company. Among other things, an Employee may not have any employment, financial interest, consulting, or other business relationship with a competitor, customer, or invest in any competitor unless advance written permission of TDBBS has been obtained. No Employee may (a) take for him/herself personal opportunities that are discovered through use of Company property, information, or position; (b) use Company property, information, or position for personal gain; or (c) compete with the Company. Employees have a duty to the Company to advance its legitimate interests when the opportunity arises.
- Outside employment may constitute a conflict of interest if it places an Employee in a position of appearing to represent the Company, involves providing, manufacturing, or distributing goods similar to those of the Company, or that the company is considering making available, or lessens the efficiency, productivity, alertness, engagement, or productivity expected of Employees to do their jobs. All such outside employment must be approved in advance by the CEO or General Counsel. Outside employment or compensated activity must not be performed at the same time the Employee is supposed to be performing his or her duties for the Company or is also being compensated by the Company and must not be performed on the Company's premises or involve the use of the Company's property, equipment, supplies, networks, facilities (e.g. telephones, modems or internet access), other Company owned resources.
- Employees may have affiliations outside of the Company but must not enter into relationships which may suggest a conflict of interest with TDBBS. A conflict of interest exists whenever an Employee's loyalty to the Company could be affected by an actual or potential personal benefit to the Employee or a family member from another source. Without limiting the foregoing, no

# Exhibit F

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | Fwd: REDACTED pick up 3/27 |
| **Date:** | Tuesday, March 27, 2018 9:57:51 PM |
| **Attachments:** | Lost Revenue by Item (2018-03-27).xlsx |
| | ATT00001.htm |

Kind regards,


Tim Fabits
Barkworthies ®
C: REDACTED
tfabits@barkworthies.com

Begin forwarded message:

> **From:** "Lara Muller" <lmuller@barkworthies.com>
> **To:** "Tim Fabits" <tfabits@barkworthies.com>
> **Cc:** "Sandy Hobson" <shobson@barkworthies.com>
> **Subject: Re:** REDACTED **pick up 3/27**
>
> Hi Tim,
>
> Attached is a lost revenue report done from 01/17-present, as well as divided by month. For quick review, the first tab has a breakdown of lost revenue, while the tabs have specific details on losses. This is still a rough look, as there might be some discontinued items included, but I can continue to polish it. There is another way to get this information, which will include a breakdown by customer, rather than item. I'm going to do a quick report tomorrow to pitch numbers against one another, and confirm accuracy. Just let me know if you need me to tweak this, or get you anything else!
>
> Lara
>
> ---
> **From:** Tim Fabits <tfabits@barkworthies.com>
> **Date:** Tuesday, March 27, 2018 at 4:36 PM
> **To:** Lara Muller <lmuller@barkworthies.com>
> **Cc:** Sandy Hobson <shobson@barkworthies.com>
> **Subject:** Re: REDACTED pick up 3/27
>
> Thanks, Lara!

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | Fwd: March Lost Revenue |
| **Date:** | Monday, April 02, 2018 4:04:07 PM |
| **Attachments:** | March.xlsx |
| | ATT00001.htm |

Kind regards,


Tim Fabits
Barkworthies ®
C: REDACTED
tfabits@barkworthies.com

Begin forwarded message:


> **Resent-From:** <tfabits@barkworthies.com>
> **From:** Lara Muller <lmuller@tdbbsllc.com>
> **Date:** April 2, 2018 at 12:37:15 PM MST
> **To:** Tim Fabits <tfabits@barkworthies.com>, Sandy Hobson
> <shobson@barkworthies.com>
> **Subject: March Lost Revenue**
>
>
> Hi Tim and Sandy,
>
> Attached is the lost sales, divided by customer, for March. I separated them out into
> different channels, and left the dates/order numbers included to help review within a
> specific customer. Please let me know if you would like any changes, or modifications,
> in this report.
>
> Lara

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | Fwd: April Sales |
| **Date:** | Thursday, April 19, 2018 1:35:22 PM |
| **Attachments:** | Lost Revenue April.xlsx |
| | ATT00001.htm |

Kind regards,


Tim Fabits
Barkworthies ®
C: REDACTED

Begin forwarded message:


> **From:** Lara Muller <<u>lmuller@barkworthies.com</u>>
> **Date:** April 19, 2018 at 11:10:18 AM CDT
> **To:** Tim Fabits <<u>tfabits@barkworthies.com</u>>
> **Subject: Re: April Sales**


> Hi Tim,

> Attached is the lost revenue report for April – as a breakdown,

> $REDACTED total on report
> $REDACTED once OFBULLY6DB30 is removed (disco'd)
> $REDACTED of lost revenue is from new products – removing their totals the lost revenue
> is adjusted to $REDACTED

> Let me know if I can get you anything else,

> Lara


> **From:** Tim Fabits <<u>tfabits@barkworthies.com</u>>
> **Date:** Wednesday, April 18, 2018 at 1:08 PM
> **To:** Lara Muller <<u>lmuller@barkworthies.com</u>>
> **Subject:** Fwd: April Sales

> Hey Lara,
> Can you provide the MTD lost revenue total for April? I just need a quick total. Thanks.

> Kind regards,

# Exhibit G

| | |
|---|---|
| **From:** | Tim Fabits |
| **To:** | Tim Fabits |
| **Subject:** | FW: Master Spreadsheet |
| **Date:** | Thursday, May 31, 2018 3:35:57 PM |
| **Attachments:** | Barworthies Master Spreadsheet_June2018.xlsx |

**From:** Katherine Morrison <kmorrison@barkworthies.com>
**Date:** Thursday, May 31, 2018 at 12:35 PM
**To:** Tim Fabits <tfabits@barkworthies.com>
**Subject:** RE: Master Spreadsheet

Here ya go, please note, the remaining 2 Display Box skus were officially disco'd yesterday. This is why the Master is titled "June", and I'm about to share it with the team along with the updated pricelists where these two skus have been removed, as well.

Thanks,

Katherine Morrison
Barkworthies ®
Brand Strategy / Execution Liaison
540.270.5255
kmorrison@barkworthies.com

**From:** Tim Fabits
**Sent:** Thursday, May 31, 2018 3:32 PM
**To:** Katherine Morrison <kmorrison@barkworthies.com>
**Subject:** Re: Master Spreadsheet

Kat,
Can you forward the latest Master? Thanks.

**From:** Katherine Morrison <kmorrison@barkworthies.com>
**Date:** Monday, April 30, 2018 at 2:09 PM
**To:** Tim Fabits <tfabits@barkworthies.com>
**Cc:** Spencer Duncan <sduncan@barkworthies.com>
**Subject:** RE: Master Spreadsheet

Hi Tim,
Of course! I've been in touch with Spencer, and I'll ensure I share it with the entire team.

Thanks,

Katherine Morrison

# Exhibit H



June 7, 2018

**By Email (tfabits@gmail.com)**

Mr. Timothy Fabits
20907 W Western Dr
Buckeye, AZ 85396

Re:   **Return of Computer and Confidential Information / Demand for
      Preservation of Evidence**

Dear Mr. Fabits:

This firm represents TDBBS LLC ("TDBBS").  I understand that your employment with TDBBS terminated on May 31, 2018.  I understand also that, last week, TDBBS sent you a prepaid mailing label so that you could return the laptop computer that TDBBS provided to you during your employment.

To date, you have failed to return the computer and apparently do not intend to do so until after you return from vacation, sometime after June 25.  Despite TDBBS's request that you ship the computer to TDBBS today (before you leave on vacation tomorrow), you have refused to do so, saying only that you would ship it after you return from vacation.

Your refusal to return the computer is unacceptable.  Any further possession of the computer by you constitutes conversion.  Please confirm to me that you will ship the computer prior to leaving on your vacation.  My email address is smanchel@manchelbrennan.com.  In addition, please be advised that you are prohibited from deleting, removing or altering anything from or on the computer.  Any destruction or alteration of files or data will constitute spoliation, for which you can be liable.

In addition to returning the laptop, TDBBS demands also that you return any Confidential Information (as that term is defined in the Non-Solicitation and Confidentiality Agreement that you executed on March 17, 2017), however formatted and however stored.  Such information includes, but is not limited to, customer lists, business plans, pricing information, and so on.  If any Confidential Information is stored on devices other than the TDBBS laptop, you should copy

Mr. Timothy Fabits
June 7, 2018
Page 2

such Confidential Information to a CD or thumb drive and return it to Mollie Neeter, TDBBS's Human Resources Director.

Finally, this letter shall serve as formal notice to preserve potential evidence related to your employment with TDBBS and subsequent activities since. In order to avoid spoliation, you must take all steps necessary to ensure the preservation of any electronically stored information, including but not limited to records, documents, evidence and things that may be subject to discovery. Such efforts may include but not be limited to making full forensic copies of any electronic storage devices, such as internet-based storage systems, CDs, DVDs, USB drives, flash drives, computer hard drives, desktop computers, laptop computers, tablet computers, smart phones, computer servers, cloud storage, or any other devices or systems used for storage of electronic information.

You must also preserve, to the extent that they might contain relevant evidence: all e-mails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts, and other data produced by project management software (such as Microsoft Project); all calendar related data, and data in task management and personal information management (PIM) software (such as Microsoft Outlook); all data created with the use of smartphones, tablets, or other personal digital assistants (PDAs); all data created with the use of document management software; all Internet and Web-browser history files, caches, and "cookie" files residing on computers or workstations; and all information on any and all back-up storage media, whether maintained locally or on the cloud; and any and all other files generated through the normal course of business.

In order to avoid spoliation, you should suspend any automatic deletion functions and normal computer maintenance procedures, including without limitation such procedures as defragmenting hard drives, deleting internet cookies, deleting browser history and favorites, and running any "disk clean-up" processes. Additionally, no electronic data storage devices and/or media that may contain electronic data which may be replaced due to failure, upgrade and/or other reasons should be disposed. Steps should also be immediately taken to safeguard all computers (other than the one you are returning to TDBBS) that may contain relevant information.

The obligations set forth in this letter apply equally to any paper documents and/or electronic data created subsequent to the date of delivery of this letter. In addition, the foregoing is a description of preservation activities; however, as a matter of law, the obligation to preserve rests, exclusively, with you. Your obligation to preserve documents and things for discovery arises in law and equity and, therefore, independently of any court order.

Mr. Timothy Fabits
June 7, 2018
Page 3


We look forward to your cooperation and prompt attention.

Very truly yours,

Steven L. Manchel

# Exhibit I

**DOCUMENT FILED UNDER SEAL**

# Exhibit J

**DOCUMENT FILED UNDER SEAL**

# Exhibit K

# DOCUMENT FILED UNDER SEAL

# Exhibit L



